VENABLE LLP
DAVID E. FINK (BAR NO. 169212)
defink@venable.com
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone:  310.229.9900
Facsimile:   310.229.9901

VENABLE LLP
MICHAEL D. JOBLOVE (*pro hac vice forthcoming*)
MDJoblove@venable.com
BRETT M. HALSEY (*pro hac vice forthcoming*)
BMHalsey@venable.com
100 Southeast Second Street, Suite 4400
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349.2310

*Attorneys for Plaintiff*
*TRG CP, LLC*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRG CP, LLC | Case No. 2:23-cv-00341 |
| Plaintiff, | |
| v. | **COMPLAINT FOR DAMAGES AND OTHER RELIEF BASED ON CLAIMS FOR:** |
| MARTELL CAPITAL GROUP, LLC D/B/A IRONGATE; DAVID WALLER; MITCH LAUFER; and Does 1-10, | **1. INTENTIONAL FRAUD;** |
| Defendants. | **2. PROMISSORY FRAUD;** |
| | **3. FRAUDULENT CONCEALMENT;** |
| | **4. CONSTRUCTIVE FRAUD;** |
| | **5. EXTORTION; AND** |
| | **6. ATTEMPTED EXTORTION** |

**NATURE OF ACTION**

1.     Plaintiff TRG CP, LLC ("TRG CP" or "Plaintiff"), by and through its undersigned attorneys, hereby brings claims against Defendants, Martell Capital Group, LLC d/b/a Irongate ("IRONGATE"), David Waller ("Waller"), Mitch Laufer ("Laufer"), and Does 1-50 (collectively "Defendants") as follows:

2.     This Complaint alleges, inter alia, violations of Cal. Civ. Code Sections 1572 and 1573 (actual fraud, promissory fraud, and constructive fraud); common law extortion; and attempted extortion by threatening letter, all arising out of a scheme by Defendants to wrongfully and unlawfully obtain money, assets and property from Plaintiff based on false representations, extortion, and unfair business practices.

3.     Specifically, Defendants fraudulently induced and wrongfully threatened Plaintiff, both verbally and in writing, to force Plaintiffs to pay monies to Defendants and/or their Mexican affiliates, sign purported agreements, and give up other valuable rights and property to which Defendants are not entitled. As a result of Defendants' false representations, extortion, concealment and other wrongful conduct, Plaintiff has suffered substantial damages.

**THE PARTIES**

4.     Plaintiff TRG CP, LLC is a Florida limited liability company with its principal place of business in Florida.

5.     Defendant Martell Capital Group, LLC d/b/a Irongate is a Delaware limited liability company with its principal place of business located at 10877 Wilshire Boulevard, Suite 2300, Los Angeles, California 90024. IRONGATE is registered to do business in California and has a registered agent in California.

6.     Defendant David Waller is an individual who resides in California and is employed by IRONGATE at its principal place of business in Los Angeles, California.

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2300
LOS ANGELES, CA 90067
310.229.9900

7.      Defendant Mitch Laufer is an individual who resides in California and is employed by IRONGATE at its principal place of business in Los Angeles, California.

8.      Plaintiff is informed and believes, and based thereon alleges, that the fictitiously named Defendants captioned hereinabove as Does 1 through 10, inclusive, and each of them (hereinafter "DOE(S)") were in some manner responsible or legally liable for the actions, damages, events, transactions and circumstances alleged herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate, or otherwise are presently unknown to Plaintiff, and Plaintiff will amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained. For convenience, each reference herein to a named Defendant or to Defendants shall also refer to the Doe Defendants and each of them.

9.      At all relevant times, each Defendant was and is the agent of each of the remaining Defendant, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each Defendant ratified and/or authorized the wrongful acts of each of the other Defendants.

10.      In committing the wrongful acts alleged herein, the Defendants have pursued, or joined in the pursuit of, a common scheme, pattern or course of conduct, and have acted in concert with and conspired with one another in furtherance of the improper acts and transactions that are the subject of this Complaint.

11.      Each of the Defendants aided, abetted, and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his, her or its overall contribution to and furtherance of the wrongdoing.  Thus, Defendants are jointly and

severally liable for the wrongful conduct set forth herein because they are aiding and abetting each other and/or conspired to commit such wrongful conduct.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a). No Defendant is a citizen of the same state as Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(c) because IRONGATE is a corporation that is deemed to reside in any judicial district where its contacts would be sufficient to subject it to personal jurisdiction, IRONGATE's principal place of business in located within this District, and Waller and Laufer reside in this District.

14. This Court has personal jurisdiction over each Defendant because they reside here or regularly conduct business here, and many of the wrongs complained of occurred in California.

## FACTS

15. Plaintiff is informed and believes that IRONGATE was formed in or about April of 2010 to serve as a holding company for certain of Jason Grosfeld's real estate investments, ventures, and properties. Jason Grosfeld is IRONGATE'S Chairman and CEO.

16. Jason Grosfeld is the son of James Grosfeld, a director of BlackRock, Inc. and formerly the Chairman and CEO of Pulte Homes, Inc., a well-known home builder and financing company in the United States.

17. IRONGATE holds itself out as an entrepreneurial full-service real estate firm specializing in the development of luxury branded residential and resort communities in California, Colorado, Hawaii, and Mexico.

18. Waller is the Managing Director of Development for IRONGATE.

19. Laufer is the Director of Legal for IRONGATE.

20.     IRONGATE owns and operates a luxury resort development in Las Cabos, Mexico known as Costa Palmas. The Costa Palmas Beach Club opened in September of 2017, and in October 2019, IRONGATE, with the Four Seasons, opened a five-star Four Seasons Hotel and a residential development known as the Four Seasons Residences at Costa Palmas.

21.     As part of IRONGATE's Costa Palmas development, IRONGATE embarked upon a robust marketing campaign for its residential development in Costa Palmas, which targeted guests of the Four Seasons and others interested in investing in real estate or living in the lucrative Costa Palmas community. IRONGATE, by and through its own representatives, as well as those employed by or working with Four Seasons, marketed and sold real estate lots, design and construction services for custom homes and builders spec homes in Costa Palmas.

**Defendants Fraudulently Induce Plaintiff to Purchase a $4.25 Million Lot in Costa Palmas**

22.     Plaintiff's representative visited the Costa Palmas resort in early 2020 and met with Emma Barnes-Webb, a sales agent for IRONGATE or its affiliates at Costa Palmas.

23.     Plaintiff knew that Costa Palmas was an IRONGATE project and was impressed with the reputations and track records of the Grosfelds, as well as the team at IRONGATE, in connection with other developments that IRONGATE had funded, developed, and operated.

24.     Ms. Barnes-Webb showed Plaintiff several residential lots for sale by IRONGATE in the Costa Palmas development. Ms. Barnes-Webb represented to Plaintiff at that time that if Plaintiff purchased a residential lot in Costa Palmas, Plaintiff would be required to use IRONGATE's design and construction team for all aspects of construction of any home there.

/ / /

/ / /

25.     One of the lots marketed by IRONGATE to Plaintiff in Costa Palmas was an ocean view villa lot identified as Lot OVV25 (the "Lot"), which listed a sale price of $6 million.

26.     Plaintiff advised Ms. Barnes-Webb that Plaintiff was interested in purchasing the Lot and building a home on that Lot comparable to other homes being developed by IRONGATE in Costa Palmas, which Plaintiff would use both for personal use and for income producing property by and through a vacation/rental market program operated by IRONGATE and Four Seasons at Costa Palmas. Before Plaintiff expended millions of dollars on land, however, Plaintiff wanted to make sure that Plaintiff fully understood and approved the costs for building a home.

27.     Accordingly, in early March 2020, Ms. Barnes-Webb placed Plaintiff in contact with Waller to discuss the design and construction of a home for Plaintiff on the Lot.

28.     Between March 10, 2020 and March 31, 2020, Plaintiff had several communications with Waller and others at IRONGATE by way of telephone calls, text messages, emails, and in person meetings at IRONGATE's offices in Los Angeles. The parties discussed the type and size of home that Plaintiff wanted to build on the Lot, IRONGATE's requirements for design and construction, the time frame for completion of design and construction, and IRONGATE's estimates regarding total costs. Plaintiff advised IRONGATE that Plaintiff's budget for construction was between $3 million and $4 million, and that Plaintiff wanted assurances that the home would be substantially completed within the next eighteen (18) months.

29.     Waller represented to Plaintiff in late March 2020 that the time was perfect for Plaintiff to purchase the Lot and embark on design and construction of a home in Costa Palmas because IRONGATE'S projects had slowed down, IRONGATE had no other lot sales in that portion of Costa Palmas in process, IRONGATE was not currently designing or constructing any other homes in that

phase of the development, and IRONGATE had ample materials and labor to complete construction within Plaintiff's timeframe.

30.    Waller further represented to Plaintiff, both in person and via emails, that if Plaintiff bought the Lot, IRONGATE could and would devote its full attention and resources to designing and constructing Plaintiff's home, and that based upon the preliminary plans IRONGATE could and would complete construction of Plaintiff's home by September of 2021. Waller also represented to and promised Plaintiff that IRONGATE would give Plaintiff the option of a fixed construction price, which would be determined and agreed based upon hard bids that IRONGATE obtained after final design was completed and approved.

31.    Based upon these representations, Plaintiff executed a construction contract on April 1, 2020, and purchased the Lot on or about April 2, 2020 for $4,250,000.

**Defendants Falsely Represent Construction will be Complete by 2021 at a Fixed Price**

32.    IRONGATE's design work for Plaintiff's home was completed on or about October 16, 2020, and Plaintiff formally signed off on the final design on November 9, 2020.

33.    On or about December 2, 2020, Mr. Waller sent Plaintiff a total construction budget of $5,974,809, which Mr. Waller represented was based on "hard bids" that IRONGATE had obtained for all aspects of construction, including the high-end finishes, flooring, masonry, windows, equipment, appliances, and fixtures that Plaintiff had selected during design. Mr. Waller told Plaintiff that this was a maximum budget, IRONGATE was negotiating for better pricing that would reduce Plaintiff's construction costs by 5% to 8%, and construction of the home would be completed by November 2021. Mr. Waller further represented to Plaintiff that IRONGATE's construction activities were "open book" and that IRONGATE

would not perform work or incur costs without Plaintiff's prior knowledge and consent.

34.    IRONGATE would not begin construction of Plaintiff's home until Plaintiff approved the final budget. On or about December 2, 2020, Plaintiff approved the $5,974,089 construction budget, which Defendants represented was the fixed cost of construction.

35.    IRONGATE began construction of Plaintiff's home in or about December 2020, but almost immediately fell behind schedule, and Plaintiff discovered that IRONGATE'S promises and representations were false, and that Waller and others at IRONGATE had concealed material information from Plaintiff, including but not limited to:

a.    Contrary to Waller's representations, IRONGATE was actively selling other lots within this phase of the Costa Palmas development;

b.    Contrary to Waller's representations, IRONGATE did not have sufficient materials and labor to timely construct Plaintiff's home;

c.    Contrary to Waller's representations, IRONGATE diverted its resources, materials and labor to the design and construction of other homes in Costa Palmas for IRONGATE'S profit, while Plaintiff's home remained stagnant;

d.    Contrary to Waller's representations, IRONGATE had no intention of completing construction of Plaintiff's home by September 21, 2021 at a fixed construction price of $5,974,089 as represented.

36.    Beginning in or about April 2021, Plaintiff repeatedly expressed concerns and frustrations about IRONGATE's lies and false promises to Waller and Jason Grosfeld.  Between April 2021 and March 2022, Waller continued to make false representations to Plaintiff about the timing and construction of Plaintiff's home, including but not limited to:

a.    In April 2021, Waller falsely represented that IRONGATE was assigning new personnel to Plaintiff's home to speed up construction;

b.     In May 2021, Waller falsely represented that Plaintiff's home would be substantially completed no later than March 2022;

c.     In August 2021, Waller falsely assured Plaintiff that IRONGATE was making construction of Plaintiff's home a priority;

d.     On December 22, 2021, when Plaintiff noted that the superstructure of the home still was not finished, Waller falsely represented that the superstructure would be completed by the end of 2021; and

e.     On March 10, 2022, Waller falsely represented that the superstructure of the home would be completed by March 31, 2022, and that substantial completion would occur by September 2022.

**Defendants Extort Property from Plaintiff and Fraudulently Induce Plaintiff to Sign Away Important Rights**

37.     In March 2022, contrary to his prior representations, Waller sent a new construction budget to Plaintiff showing that IRONGATE expected to receive total construction costs from Plaintiff in the amount of $6,663,125 rather than the December 2020 fixed price as represented.

38.     At that time, Plaintiff had already spent almost $4 million toward design and construction of Plaintiff's home, which was still only at the superstructure stage.

39.     Plaintiff objected to IRONGATE's increased construction budget and demanded that IRONGATE complete construction of Plaintiff's home, which was by then at least a year behind schedule. In April 2022, when IRONGATE refused to honor its representation that Plaintiff's construction costs were fixed, or to work on Plaintiff's home, Plaintiff was left with no choice but to cause its counsel to send a demand letter to Defendants, along with a draft lawsuit against IRONGATE for damages that Plaintiff had incurred as a result of IRONGATE's wrongful conduct.

40.     In May of 2022, even though no work had been done on Plaintiff's home since March, Waller sent yet another construction budget to Plaintiff, this time

with total development costs of approximately $7.3 million. IRONGATE tried to strong arm Plaintiff into signing such a contract by claiming that Plaintiff's membership in the Beach Club at Costa Palmas, which was purchased in full with the Lot, would be revoked if the parties did not resolve their dispute.

41.     Beginning in early May 2022 and continuing through July 2022, Waller and Laufer repeatedly told Plaintiff, through Plaintiff's representative, Amit Raizada, and Plaintiff's counsel, Linda McFee, that IRONGATE would not perform any more work on Plaintiff's home, which was just a shell that was open to the elements and unprotected from deterioration and dilapidation from weather, wind and other adverse conditions, unless and until Plaintiff signed an Estoppel Certificate by which Plaintiff expressly: (a) agreed that the construction costs were *not* fixed, despite Waller's previous, repeated representations otherwise; (b) promised to pay IRONGATE's construction costs pursuant to the new budget; (c) waived and released all rights to sue IRONGATE in the United States, and (d) waived and released all claims under the Racketeering Influenced and Corrupt Organizations Act.  On June 27, 2022, Laufer sent an email to Ms. McFee and Mr. Raizada with language that IRONGATE required to be included in Plaintiff's Estoppel Certificate and confirming that IRONGATE would not continue construction on Plaintiff's home without the signed Estoppel Certificate, stating: "Hopefully we can move beyond this last point and on to completion of your project."

42.     Defendants attached to the Estoppel Certificate a construction budget showing total actual construction costs for Plaintiff's home of $7,217,515. At that time, Defendants represented to Plaintiff, through Mr. Raizada and Ms. McFee, that the construction budget attached to the Estoppel Certificate contained the current costs to complete construction of Plaintiff's home, that IRONGATE would restart construction immediately and take appropriate measures to protect Plaintiff's property from damage once the Estoppel Certificate was signed, and that construction would be completed by the end of 2022.

43.    On July 7, 2022, based upon these representations, as a result of coercion by Defendants and under the substantial duress created by Defendants' threat to allow Plaintiff's home to deteriorate and to damage or impair the value of the Lot for which Plaintiff had already spent millions of dollars, Plaintiff signed the Estoppel Certificate.

44.    By signing the Estoppel Certificate, Plaintiff ostensibly gave up its right to claim the construction costs were fixed at $5,974,089 and obligated itself to pay $7,217,515. Plaintiff also was forced to give up valuable property rights and assets, including RICO claims and the right to sue IRONGATE and its affiliates in the United States.

45.    Plaintiff thereafter learned that Defendants' material representations that induced Plaintiff to sign the Estoppel Certificate were also false:

   a.    Barely more than one month after securing Plaintiff's Estoppel Certificate, on August 24, 2022, Waller sent an email to Plaintiff stating that total construction costs now exceeded $10 million and offering to enter into yet another construction contract for $10.5 million, with options to move forward with construction;

   b.    On October 7, 2022, Waller sent Plaintiff an updated construction budget with a total of $10,781,082 in construction costs (an increase of $3.5 million from the budget attached to the Estoppel Certificate) and a promissory note for a construction draw allocating monies for certain line items in the new budget;

   c.    On October 17, 2022, in response to Plaintiff's shock over IRONGATE's demand for $3 million more in alleged "construction costs," Waller admitted that IRONGATE had hired a new contractor and had included new contingencies in the budget that Plaintiff had not approved;

   d.    On November 7, 2022, Waller sent an email to Plaintiff admitting that the construction budget Defendants attached to the Estoppel Certificate in July

2022 was false because it used 2020-2021 numbers rather than current numbers. In other words, Waller admitted that the "new" budget Plaintiff was forced to approve through the Estoppel Certificate did not reflect Defendants' actual estimated costs to complete construction;

e.     Contrary to Defendants' promises and representations, no work has been performed on Plaintiff's home since July 7, 2022, even though Plaintiff signed the Estoppel Certificate.

46.     Once again and despite having already forced Plaintiff's concessions in the Estoppel Certificate, IRONGATE attempted to extort additional monies from Plaintiff with threats not to complete construction of Plaintiff's home and let the unfinished home deteriorate in the elements, thereby decreasing or destroying the value of Plaintiff's property.  On October 19, 2022, Waller sent Plaintiff an email stating that no work would be performed on Plaintiff's home unless Plaintiff accepted the new budget and signed the promissory note; and on November 7, 2022, Waller sent another email advising that construction of Plaintiff's home would be on hold until Plaintiff executes the promissory note for the recent draw request.

47.     Defendants' representations in the Estoppel Certificate and Defendants' representations to induce Plaintiff to sign the Estoppel Certificate were false. Defendants knew that they were false or that Defendants had no reasonable basis to believe that they were true. In any event, Defendants had no intention of performing their promises when these statements were made.

48.     Since forcing Plaintiff to sign the Estoppel Certificate on July 7, 2022, IRONGATE has not done any more work on the home or taken any precautions to protect Plaintiff's property from decline. Plaintiff has paid more than $4 million for design and construction of Plaintiff's home, which is nowhere near complete almost three years after Plaintiff purchased the Lot.

49.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has been substantially injured, including without limitation the following:

a.      The difference between the actual costs to complete construction of the home and the $7.3 million that Defendants falsely represented to Plaintiff in the July 7, 2022 Estoppel Certificate was the total construction costs, which is the benefit of Plaintiff's bargain;

b.      Plaintiff has paid more than $110,000 in HOA fees for Costa Palmas for a home that is nowhere near completion and which has never been used;

c.      Plaintiff has paid more than $75,000 in storage fees, and continues to incur additional such fees, for furniture, fixtures, and other items that have been ordered and delivered, but that cannot be installed because construction was not completed by the end of 2022; and

d.      Plaintiff's home, and certain materials for which Plaintiff has already paid, have been left unprotected from adverse conditions and the elements, causing such materials to deteriorate and otherwise suffer damage.

# FIRST CAUSE OF ACTION

## (Fraudulent Misrepresentation)

50.      Plaintiff incorporates the allegations contained in paragraphs 1 through 49 above, as though fully set forth herein.

51.      Between May 2022 and July 2022,   IRONGATE, by and through Waller and Laufer made false representations to Plaintiff, through Mr. Raizada and Ms. McFee, as follows:.

a. Defendants attached to the Estoppel Certificate a construction budget showing total construction costs for Plaintiff's home of $7,217,515;

b. Defendants represented that this construction budget stated the current costs to complete construction of Plaintiff's home;

c. Defendants represented that IRONGATE would restart construction immediately   and take appropriate measures to protect Plaintiff's property from damage once the Estoppel Certificate was signed; and

d.  Defendants represented that construction of Plaintiff's home would be completed by the end of 2022.

52.     Those representations were material to Plaintiff's decision to sign the Estoppel Certificate and to agree to pay additional monies for construction, give up substantial rights, including Plaintiff's claim that the construction price was fixed as represented, and forgo, release or waive material rights and causes of action.

53.     Those representations were false.

54.     Defendants knew that these representations were false when they were made, and Defendants made the representations with the intent to defraud and deceive Plaintiff and with the  intent to induce Plaintiff to rely on them by signing the Estoppel Certificate and making the concessions and payments required therein.

55.     Plaintiff, at the time these representations were made and when Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants' representations and believed them to be true.

56.     Plaintiff reasonably relied on  these representations by  signing the Estoppel Certificate, whereby Plaintiff gave up its claim that the construction price had been fixed in December 2020, agreed to pay Plaintiff the additional costs of construction in the attached budget, and released, gave up or waived material rights and causes of action.

57.     Had Plaintiff known the actual facts, Plaintiff would not have signed the Estoppel Certificate and  given  up  such  rights  or  agreed  to  such  payments. Plaintiff's' reliance on Defendants' representations was justified.

58.     As a direct and proximate result of Defendants' intentional fraud, the Estoppel Certificate is null and void.

59.     As  a  direct  and  proximate  result  of  Defendants'  intentional  fraud, Plaintiff has been damaged in an amount according to proof within the jurisdiction of this Court, including the damages set forth above.

60.    Defendants' conduct was willful, intentional and in reckless disregard of Plaintiff's rights, designed to deprive Plaintiff of its money, property and legal rights and otherwise cause injury, and was despicable conduct so as to justify an award of exemplary and punitive damages.

**SECOND CAUSE OF ACTION**

**(Promissory Fraud)**

61.    Plaintiff incorporates the allegations contained in paragraphs 1 through 60 above, as though fully set forth herein.

62.    Between May 2022 and July 2022,   IRONGATE, by and through Waller and Laufer made promises  to Plaintiff, through Mr. Raizada and Ms. McFee, as follows:.

     a.  Defendants attached to the Estoppel Certificate a construction budget showing total construction costs for Plaintiff's home of $7,217,515;

     b.  Defendants promised that this construction budget stated the costs to complete construction of Plaintiff's home;

     c.  Defendants promised that IRONGATE would restart construction immediately   and take appropriate measures to protect Plaintiff's property from damage once the Estoppel Certificate was signed; and

     d.  Defendants promised that construction of Plaintiff's home would be completed by the end of 2022.

63.    Those promises were material to Plaintiff's decision to sign the Estoppel Certificate, to agree that the construction price was not fixed as represented, to agree to pay Plaintiff additional costs of construction, and to forgo, release or waive material rights and causes of action.

64.    At the time(s) that Defendants made these promises to Plaintiff, Defendants had no present intention of performing them.

/ / /

/ / /

65.     Defendants made these promises with the intent to deceive Plaintiff and with the intent to induce Plaintiff to rely on them by signing the Estoppel Certificate and making the concessions and payments required therein.

66.     At the time these promises were made, Plaintiff did not know that they were false or that Defendants had no intention of performing them.

67.     Plaintiff reasonably relied on these promises by signing the Estoppel Certificate, whereby Plaintiff gave up its claim that the construction price was fixed as represented, agreed to pay Plaintiff the additional costs of construction in the attached budget, and released, gave up or waived material rights and causes of action.

68.     Had Plaintiff known that Defendants could not keep and did not intend to perform their promises to Plaintiff, Plaintiff would not have taken such action. Plaintiff's' reliance on Defendants' promises was justified.

69.     Defendants failed to perform their promises to Plaintiff.

70.     As a direct and proximate result of Defendants' promissory fraud, the Estoppel Certificate is null and void.

71.     As a direct and proximate result of Defendants' promissory fraud, Plaintiff has been damaged in an amount according to proof within the jurisdiction of this Court, including the damages set forth above.

72.     Defendants' conduct was willful, intentional and in reckless disregard of Plaintiff's rights, designed to deprive Plaintiff of its money, property and legal rights and otherwise cause injury, and was despicable conduct so as to justify an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION
### (Fraudulent Concealment)

73.     Plaintiff incorporates the allegations contained in paragraphs 1 through 72 above, as though fully set forth herein.

74. In negotiating the Estoppel Certificate and inducing Plaintiff to sign that document, IRONGATE, Waller and Laufer concealed and suppressed material facts from Plaintiff, including but not limited to: (a) the numbers included within the construction budget attached to the Estoppel Certificate were wrong, as Defendants used outdated or invalid bids from 2020-2021 rather than true and accurate numbers from 2022 bids; and (2) IRONGATE lacked sufficient materials, labor and resources to complete construction of Plaintiff's home by the end of 2022.

75. Defendants had had superior knowledge of these facts, and Plaintiff could not reasonably have discovered these facts on its own without full disclosure. Thus, Defendants had a duty to disclose the true facts to Plaintiff.

76. Those facts were material to Plaintiff's decision to sign the Estoppel Certificate and make the concessions therein.

77. Defendants concealed or suppressed this information from Plaintiff with the intent to defraud and deceive Plaintiff and with the intent to induce Plaintiff to sign the Estoppel Certificate.

78. When Plaintiff signed the Estoppel Certificate, Plaintiff was not aware of the true facts. Plaintiff would not have signed the Estoppel Certificate and given up substantial rights and agreed to additional construction payments had Plaintiff known of these concealed or suppressed facts.

79. As a direct and proximate result of Defendants' intentional concealment or suppression of material facts, the Estoppel Certificate is null and void.

80. As a direct and proximate result of Defendants' intentional concealment or suppression of material facts, Plaintiff has been damaged in an amount according to proof within the jurisdiction of this Court, including the damages set forth above.

81. Defendants' conduct was willful, intentional and in reckless disregard of Plaintiff's rights, designed to deprive Plaintiff of its money, property and legal

rights and otherwise cause injury, and was despicable conduct so as to justify an award of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION

### (Constructive Fraud/Negligent Misrepresentation)

82.     Plaintiff incorporates the allegations contained in paragraphs 1 through 81 above, as though fully set forth herein.

83.     Between May 2022 and July 2022, IRONGATE, through Waller and Laufer, made false representations to Plaintiff, through Mr. Raizada and Ms. McFee, as follows:.

       a.  Defendants attached to the Estoppel Certificate a construction budget showing total construction costs for Plaintiff's home of $7,217,515;

       b.  Defendants represented that this construction budget stated the costs to complete construction of Plaintiff's home;

       c.  Defendants represented that IRONGATE would restart construction immediately   and take appropriate measures to protect Plaintiff's property from damage once the Estoppel Certificate was signed; and

       d.  Defendants represented that construction of Plaintiff's home would be completed by the end of 2022.

84.     Those representations were material to Plaintiff's decision to sign the Estoppel Certificate, to agree that the construction price was not fixed as represented, to agree to pay Plaintiff additional costs of construction, and to forgo, release or waive material rights and causes of action.

85.     Those representations were false.

86.     When Defendants made these representations they had no reasonable basis for believing that they were true.

/ / /

/ / /

87.     Defendants made the representations with the intent to induce Plaintiff to rely on them by signing the Estoppel Certificate and giving up rights and making the concessions and additional payments required therein.

88.     Plaintiff was ignorant of the falsity of Defendants' representations and believed them to be true.

89.     Plaintiff reasonably relied on these representations by signing the Estoppel Certificate, whereby Plaintiff gave up its claim that the construction price was fixed as represented, agreed to pay Plaintiff the additional costs of construction in the attached budget, and released, gave up or waived material rights and causes of action.

90.     Had Plaintiff known the true facts, Plaintiff would not have taken such action.  Plaintiff's reliance on Defendants' representations was justified.

91.     As a direct and proximate result of Defendants' constructive fraud and negligent misrepresentation, the Estoppel Certificate is null and void.

92.     As a direct and proximate result of Defendants' constructive fraud and negligent misrepresentation, Plaintiff has been damaged in an amount according to proof within the jurisdiction of this Court, including the damages set forth above.

**FIFTH CAUSE OF ACTION**

**(Extortion)**

93.     Plaintiff hereby incorporates the allegations in paragraphs 1 through 92 above, as though fully set forth herein.

94.     IRONGATE, Waller and Laufer obtained valuable assets, property and rights from Plaintiff in the Estoppel Certificate, which was induced by the wrongful use of force, fear, or threats to allow or cause damage Plaintiff's property.

95.     In or about July, 2022, knowing that Plaintiff had already spent millions of dollars to purchase the Lot and for construction of a home that was only partially constructed, Defendants forced Plaintiff to sign the Estoppel Certificate

under duress and threat. Specifically, Defendants threatened not to complete construction of Plaintiff's home and to leave the unfinished shell and valuable materials that Plaintiff had already paid for unprotected from the elements and subject to deterioration and decline unless Plaintiff gave up and/or agreed to give Defendants additional monies, property or rights to which Defendants were not entitled, including:

    a.  Defendants forced Plaintiff to give up any claim or right to claim that the construction costs had been fixed as represented;

    b.  Defendants forced Plaintiff to obligate itself to pay approximately $7.3 million in construction costs, which Defendants knowingly fraudulently represented it would take to complete construction of the home;

    c.  Defendants forced Plaintiff to release all RICO claims against IRONGATE or its affiliates; and

    d.  Defendants forced Plaintiff to give up or waive any rights Plaintiff had to sue IRONGATE or its affiliates in the United States.

96.    Defendants' refusal to perform work on Plaintiff's home and/or take appropriate measures to protect Plaintiff's home and the materials therein from deterioration or damage have caused and would continue to cause the value of Plaintiff's property to seriously diminish or depreciate.  Plaintiff, therefore, was forced to sign the Estoppel Certificate to protect its property from damage or harm.

97.    Defendants thereby obtained monies and valuable assets and rights by threat and duress.

98.    At the time that Defendants made their demands that Plaintiff sign the Estoppel Certificate Defendants knew that their extortive demands and the representations made in and surrounding the Estoppel Certificate were false and that their threats to stop construction of Plaintiff's home and allow Plaintiff's property to decline and diminish were wrongful.

99.   At the time that Defendants forced Plaintiff to sign the Estoppel Certificate and obligate itself to pay a higher and knowingly fraudulent budget price and give up Plaintiff's substantial rights, Defendants knew that Plaintiff had suffered or would suffer actual damages as a result.

100.   As a direct and proximate result of Defendants' extortionate conduct, the Estoppel Certificate is null and void.

101.   As a direct and proximate result of Defendants' extortion, Plaintiff has been damaged in an amount according to proof within the jurisdiction of this Court, including the damages set forth above.

102.   Defendants' conduct was willful, intentional and in reckless disregard of Plaintiff's rights, designed to deprive Plaintiff of its money, property and legal rights and otherwise cause injury, and was despicable conduct so as to justify an award of exemplary and punitive damages.

## SIXTH CAUSE OF ACTION

### (Attempted Extortion by Threatening Letter—Cal. Penal Code Section 523)

103.   Plaintiff hereby incorporates the allegations in paragraphs 1 through 102 above, as though fully set forth herein.

104.   Between June 2022 and November 2022, with the intent to extort money or other property from Plaintiff, Defendants made written threats to cause unlawful injury to Plaintiff's property by refusing to perform any work on Plaintiff's home and leaving the unfinished home and materials that Plaintiff had already paid for unprotected and exposed to harm from the elements if Plaintiff did not pay additional monies to Defendants and give Defendants substantial rights and concessions that Defendants were not entitled to receive.

105.   Specifically, on June 27, 2022, Defendants (Laufer) sent an email to Plaintiff's counsel in connection with the Estoppel Certificate, confirming that Defendants would proceed to complete the project only after the Estoppel Certificate was signed.

106.   On October 19, 2022, Defendants (Waller) sent an email to Plaintiff stating that   no work would be performed on Plaintiff's home unless Plaintiff accepted the exorbitant new budget for more than $10 million and signed the promissory note expressly or implicitly agreeing to that budget.

107.   On November 7, 2022, Waller sent Plaintiff an email advising that all work on   Plaintiff's home is on hold until Plaintiff executes the promissory note for the recent draw request based on the $10 million budget.

108.   By and through these written threats, Defendants have attempted to extort more than $3 million more from Plaintiff for construction costs that are either false or should have been disclosed to Plaintiff in connection with the Estoppel Certificate.

109.   As a direct and proximate result of Defendants' extortionate conduct, the Estoppel Certificate is null and void.

110.   As a direct and proximate result of Defendants' extortion, Plaintiff has been damaged in an amount according to proof within the jurisdiction of this Court, including the damages set forth above.

111.   Defendants' conduct was willful, intentional and in reckless disregard of Plaintiff's rights, designed to deprive Plaintiff of its money, property and legal rights and otherwise cause injury, and was despicable conduct so as to justify an award of exemplary and punitive damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff TRG CP, LLC prays for judgment against Defendants, and each of them, as appropriate to each claim, as follows:

1. Compensatory damages according to proof, as to each of Plaintiff's claims, including but not limited to:

    a.   The difference between the actual costs to complete construction of the home and the $7.3 million that Defendants falsely represented to Plaintiff in the July 7, 2022 Estoppel Certificate was the total construction costs,

which is the benefit of Plaintiff's bargain;

   b.  More than $110,000 in HOA fees Plaintiff has paid for a home that is nowhere near completion and which has never been used;

   c.  More than $75,000 in continuing storage fees for furniture, fixtures, and other items that have been ordered and delivered, but that cannot be installed because construction was not completed by the end of 2022;

   d.  Damaged caused to Plaintiff's home and materials therein and/or to Plaintiff's property by virtue of Defendants' wrongful conduct and refusal to work on Plaintiff's home or take appropriate measures to protect the property from harm, among other damages.

2.  Punitive damages as to claims for which they are available under applicable law in such amount as the Court deems just and proper;

3.  A declaration of equitable relief, including rescission, restitution, and an order for disgorgement of ill-gotten monies in such amount as the Court deems just and proper;

4.  Costs of suit;

5.  Attorneys' fees as allowed by law;

6.  Prejudgment interest to the extent permitted by law; and

7.  Such other and further relief as the Court deems equitable and just.

/ / /

/ / /

/ / /

1

## DEMAND FOR JURY TRIAL

2      Plaintiff hereby demands trial by jury.

3

4    Dated:  January 17, 2023                VENABLE LLP

5                                    By:    /s/: DAVID E. FINK

6                                           DAVID E. FINK
                                            MICHAEL D. JOBLOVE *(pro hac*
7                                           *vice forthcoming)*
                                            BRETT M. HALSEY *(pro hac*
8                                           *vice forthcoming)*
9                                           *Attorneys for Plaintiff*
                                            *TRG CP, LLC*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28